FILED
United States Court of Appeals
Tenth Circuit

June 24, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KRISTOFER THOMAS KASTNER,

Plaintiff - Appellant,

v.

INTRUST BANK, chartered,
a professional corporation; C.Q.
CHANDLER, individually and as
President, Chairman and CEO of Intrust
Bank; ROGER W. LEMON, individually
and as Former Vice President and Trust
Officer of Intrust Bank; MICHAEL P.
CANNADY, individually and as Former
Vice President and Trust Office of Intrust
Bank; DAVID SUTTON, individually
and as Officer at Intrust Bank; INTRUST
FINANCIAL CORPORATION, by and
through C.Q. Chandler, President,

Defendants - Appellees.

No. 13-3254
(D.C. No. 6:10-CV-01012-EFM-KMH)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Kristofer Thomas Kastner, pro se, appeals from the district court's orders dismissing his claims in part and granting defendants' motion for summary judgment. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    Background

In June 1996, Kastner's grandmother, Jessie I. Brooks, executed a revocable trust naming Intrust Bank as the trustee.  The trust provided that distributions would be made to Ms. Brooks during her lifetime and upon her death, continued for the benefit of her daughter, Nola Mae Wills.  The trust further provided that the remainder of the trust's assets, if any, would be distributed to Kastner upon the death of his mother, Ms. Wills.

Ms. Brooks died in 2000; however, Ms. Wills is living and receiving income distributions from the trust.  Kastner asserts that in January 2009 he received a letter from Intrust Bank showing that the trust had lost money since Ms. Brooks's death. Proceeding pro se, Kastner, who is legally trained but is not admitted to the practice of law, filed this diversity action in January 2010 against Intrust Bank and four of its officers, C.Q. Chandler, Roger Lemon, Michael Cannady, and David Sutton (collectively "Intrust").  He alleged nine causes of action based on the alleged devaluation of the trust which he claims is due to trust provisions waiving the

prudent investor standard and Intrust's negligence.[1]  Kastner asserted the following claims: 1) breach of fiduciary duties to Ms. Brooks in the creation and execution of the trust; 2) breach of fiduciary duty to refrain from self-dealing to Ms. Brooks in entering the trust agreement; 3) failure to exercise the degree of care and skill that would be used by a reasonably competent trustee under the same or similar circumstances, in failing to produce advice, counsel, or explanation of the waivers of negligence and prudent investor standards; 4) breach of trust against Ms. Brooks, her estate, and Kastner; 5) negligent misrepresentation to Ms. Brooks, her estate, and Kastner as to the nature of the trust agreement and the consequences of its waiver provisions; 6) fraud by silence by failing to disclose material facts concerning the nature of the trust agreement and consequences of its waiver provisions; 7) fraud by silence in failing to disclose material facts concerning the nature of the trust investments or explain poor investments; 8) fraud in the creation and investment of the trust; and 9) reformation of the trust agreement to remove the provisions concerning waivers of negligence and prudent investor standards.

Intrust moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1), (6), (7), and 21.  In November 2010, the district court applied Kansas law and dismissed claims 1, 2, 3, 5, 6, and part of 8 (fraud in the creation) as time-barred under

[1]     Kastner brought suit on behalf of himself, as representative of his grandmother's estate, and as a beneficiary of the trust.  He also named as plaintiffs the Estate of Jessie I. Brooks and Jessie I. Brooks.  However, only Kastner has taken this appeal.

Kan. Stat. Ann. § 60-513(b), which requires actions to be brought within ten years of the act giving rise to the cause of action.[2] Four claims remained.[3]

In February 2011, Kastner then amended his complaint to assert three new claims for breach of contract, deceptive trade practices in violation of the Kansas Consumer Protection Act ("KCPA"), and civil conspiracy. And within his surviving reformation-of-trust claim, Kastner now sought to remove the trustee.

Intrust moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6), and all remaining claims other than breach of trust. On June 1, 2011, the district court granted the motion, leaving only the breach-of-trust claim.

After discovery, Intrust moved for summary judgment on the remaining claim. The district court granted summary judgment in favor of Intrust, and Kastner now appeals. He challenges the district court's dismissal orders, summary judgment order, and certain discovery rulings. He also claims bias on the part of the district court judge and requests certification of questions of state law.

---

[2]    In diversity cases, the law of the forum state governs analysis of the underlying claims. *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1167 (10th Cir. 2007). Federal courts sitting in diversity also apply state law for statute-of-limitations purposes. *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

[3]    The district court also struck as plaintiffs Jessie I. Brooks, the Estate of Jessie I. Brooks, and Kristofer Thomas Kastner as personal representative of the Estate.

## II. Discussion

### A. Motions to Dismiss

We review de novo a district court's dismissal of a complaint for failure to state a claim, applying the same standards as the district court. *Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008). We accept the well-pleaded allegations of the complaint as true and construe the allegations in the light most favorable to the plaintiff. *Id*. To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And because Kastner is proceeding pro se, we construe his filings liberally; however, we will not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### 1. November 2010, Dismissal Order

Kastner states that he appeals from the district court's November 2010 dismissal order. Aplt. Opening Br. at 4. That order dismissed five claims but on appeal Kastner argues error with regard to two of the five claims: negligence (claim # 3) and negligent misrepresentation (claim # 5). He claims, in conclusory fashion, that these claims were "each viable claims plead appropriately." *Id*. at 24.

The district court held that a number of Kastner's claims, including his claims for negligence and negligent misrepresentation, were related to the creation of the trust agreement and inclusion of the waiver provisions. Under Kansas law, claims

> shall not be deemed to have accrued until the act giving
> rise to the cause of action first causes substantial injury, or,

- 5 -

if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action*.

Kan. Stat. Ann. § 60-513(b) (emphasis added). These claims were premised on alleged wrongful conduct concerning the 1996 creation and execution of the trust agreement, yet Kastner's suit was filed fourteen years after execution of the trust agreement. Consequently, the court held these claims were barred by the ten-year statute of repose under § 60-513(b). We agree.

To the extent Kastner also seeks to challenge the dismissal of his other claims for relief related to the creation and inclusion of the waiver provisions (claims 1, 2, 6, and part of 8), these claims are likewise time-barred.

### 2. June 2011, Dismissal Order

After Kastner amended the complaint following the district court's November 2010 dismissal order, Intrust moved to dismiss under Fed. R. Civ. P. 12(b)(6), six of the seven remaining claims (all but the breach-of-trust claim).[4] The district court granted the motion.

---

[4]     The seven claims were: breach of trust; fraud by silence in failing to disclose material facts concerning the nature of the trust investments or explain poor investments; fraud in the investment of the trust; reformation of trust; breach of contract; deceptive trade practices under the KCPA; and civil conspiracy.

- 6 -

Regarding the reformation-of-trust and removal-of-trustee claim, the district court agreed with Intrust that Kastner was not a "qualified beneficiary" and, therefore, lacked standing to seek reformation or modification of the trust. On appeal, Kastner argues the district court erred in finding he was not a "qualified beneficiary," pointing to the fact that Intrust has been treating him as a qualified beneficiary since 2001.

Under Kansas law, a "beneficiary" is a person who "[h]as a present or future beneficial interest in a trust, vested or contingent." Kan. Stat. Ann. § 58a-103(2)(A). Although Kansas has substantially adopted the Uniform Trust Code ("UTC"), its definition of a "qualified beneficiary" is a departure from the UTC. Under the UTC, a "qualified beneficiary" is a beneficiary who, on the date the beneficiary's qualification is determined:

> (A) Is a distributee or permissible distributee of trust income or principal;
> (B) Would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in subparagraph (A) terminated on that date without causing the trust to terminate; or
> (C) Would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.

Unif. Trust Code § 103(13). In contrast, under the Kansas Uniform Trust Code ("KUTC"), a "qualified beneficiary" is a "beneficiary who, as of the date in question, either is eligible to receive mandatory or discretionary distributions of trust income or principal, or would be so eligible if the trust terminated on that date." Kan. Stat.

Ann. § 58a-103(12)(A). The KUTC therefore does not include within its definition of "qualified beneficiaries" an individual who would be eligible to receive a distribution if the current distributee's interests terminated without terminating the trust. Under the UTC definition, Kastner, a contingent beneficiary, would qualify as a "qualified beneficiary" because he would be a distributee if Ms. Wills' interest terminated and the trust continued. But the KUTC is critically different in this respect.

Additionally, as relevant to Kastner's reformation-of-trust claim, under Kansas law only a settlor, co-trustee or "qualified beneficiary" may request removal of a trustee, *id*. § 58a-706(a), and only a settlor, trustee or "qualified beneficiary" may seek modification or termination of a trust, *id*. § 58a-410(b). As such, contingent beneficiaries cannot request removal of a trustee or seek modification of a trust.

In determining whether Kastner was a "qualified beneficiary" under Kansas law the district court looked to the terms of the trust. Pursuant to the trust terms, the district court found that Kastner was not currently eligible to receive any distributions, mandatory or discretionary. It reasoned that the trust provides for distributions to Ms. Wills (Kastner's mother), who is currently living, and only upon her death is Kastner entitled to distributions. Neither would Kastner have been eligible to receive distributions if the trust terminated at that point in time while Ms. Wills is still living. The district court concluded, and we agree, that Kastner is

- 8 -

not a "qualified beneficiary" under the KUTC. Accordingly, dismissal of the reformation-of-trust claim was appropriate.[5]

Turning to Kastner's deceptive-trade-practices claim under the KCPA, the district court dismissed the claim finding that Kastner was not a "consumer" within the meaning of the Act, nor did he allege a "consumer transaction" between himself and Intrust. Kastner argues on appeal that the "statute clearly applies and [he] has a 7th Amendment right to the claim." Aplt. Opening Br. at 23. We disagree.

As the district court observed, the KCPA applies to "'consumers' engaged in 'consumer transactions' with 'suppliers.'" *Berry v. Nat'l Med. Servs., Inc.*, 205 P.3d 745, 752 (Kan. Ct. App. 2009); *see also* Kan. Stat. Ann. § 50-624(b), (c), (l). Its "protection is limited to individuals . . . who directly contract with suppliers for goods or services." *CIT Grp./Sales Fin., Inc. v. E-Z Pay Used Cars, Inc.*, 32 P.3d 1197, 1204 (Kan. Ct. App. 2001). A "consumer" is "an individual . . . who seeks or acquires property or services for personal, family, household, business or agricultural purposes." Kan. Stat. Ann. § 50-624(b). A "consumer transaction" is a "sale, lease, assignment or other disposition for value of property or services within [Kansas]

---

[5] Kastner seeks certification on "the qualified beneficiary issue and interpretation of state trust duties." Motion, 6-7. We decline to certify because Kastner does not present a specific legal question for certification. Further, he did not seek certification until after losing in district court. *See Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000). And the issues Kastner raises for certification are not "sufficiently novel that we feel uncomfortable attempting to decide [them] without further guidance." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007).

(except insurance contracts regulated under state law) to a consumer; or a solicitation by a supplier with respect to any of these dispositions." *Id*. § 50-624(c).  Kastner did not allege in his complaint that he directly sought or acquired Intrust's services in exchange for anything of value.  Instead, he alleged that Intrust "deceived" him about the investment and performance of the trust and failed to provide him with certain records.  R., Vol. I, at 1229.  We agree with the district court that Kastner did not allege that he was a "consumer" or that he was engaged in a "consumer transaction" within the meaning of the KCPA.

The district court dismissed the remaining claims concluding that because Kastner sought damages for only depreciation of the value of the trust property, the claims were subsumed by the breach-of-trust claim.  *See* Kan. Stat. Ann. § 58a-1003(b) ("Absent a breach of trust, a trustee is not liable to a beneficiary for a loss or depreciation in the value of trust property or for not having made a profit.").  We see no error.

**B.  Summary Judgment Motion**

"We review a district court's decision to grant summary judgment de novo, applying the same standard as the district court." *Squires v. Breckenridge Outdoor Educ. Ctr.*, 715 F.3d 867, 872 (10th Cir. 2013) (internal quotation marks omitted).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The district court granted summary judgment in favor of Intrust on Kastner's claim for breach of trust. Kastner alleged that Intrust invested the trust assets poorly, Intrust did not invest the trust assets according to the beneficiaries' wishes, Intrust failed to provide Kastner with information necessary to protect his interests, and Intrust breached various statutory duties. Intrust moved for summary judgment on grounds that 1) Kastner could not establish the appropriate standard of care for a professional trustee and breach of that standard because he did not provide an expert to testify to these matters and 2) even if Kastner could produce expert testimony on the standard of care, Intrust did not commit a breach of trust. In response to Intrust's motion, Kastner filed approximately 1,200 pages of separate documents and exhibits. The district court found that Kastner failed to appropriately controvert Intrust's facts because he "did not coherently respond" to the statement of facts. R., Vol. III, at 1373. Because the district court concluded that Kastner failed to demonstrate a genuine issue of material fact on the breach-of-trust claim, it did not reach the standard of care issue.

Under KUTC, a violation by a trustee of a duty the trustee owes to a beneficiary is a breach of trust. Kan. Stat. Ann. § 58a-1001. The KUTC further provides that the Uniform Prudent Investor Act ("UPIA") governs the investment and management of trust assets. *See id*. § 58a-901; *see also McGinley v. Bank of Am., N.A.*, 109 P.3d 1146, 1153 (Kan. 2005). The KUTC and UPIA identify certain duties owed to beneficiaries, several of which Kastner claims Intrust breached.

- 11 -

On appeal, Kastner argues that he has "proved actual guilt" and "with opinions totaling 141 pages and over 800 pages of supporting evidence, proves the breach of the standard of care." Aplt. Opening Br. at 7-8. As we construe his brief, he claims that the duties of loyalty, impartiality, and prudent administration have been breached. His opening brief provides endnotes in which he cites to an affidavit and "legal opinion," each over fifty pages and each authored by Kastner, in which he discusses the standard of care and Intrust's alleged breach of it.

Intrust argues on appeal, as it did below, that to prove his breach-of-trust claim, Kastner is required to provide expert testimony. *See In re Estate of Maxedon*, 946 P.2d 104, 111 (Kan. Ct. App. 1997) (holding that to establish the standard of care for a professional trustee, and breach of that standard, it is ordinarily necessary to present expert testimony). Kastner submitted himself as an expert witness on the standard of care for a professional trustee. Intrust asserts that Kastner is not a competent expert under Fed. R. Evid. 702, despite his legal training he cannot establish the standard of care. The district court found that Kastner had not appropriately designated experts and, thus, he would not have appropriate expert testimony to support his breach-of-trust claim past the summary judgment stage. *See* R., Vol. III, at 1377 n.16. Review of the record shows that Kastner disclosed one witness pursuant to Fed. R. Civ. P. 26(a)(2)(C) who would testify consistent with Kastner's "legal opinion" documents (sixty-one pages), but would not submit a

written report.[6]  In short, it does not seem that Kastner submitted any expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(B).

On these facts, we cannot conclude that the district court erred in granting summary judgment in favor of Intrust.  Further, we agree with the district court that Kastner has not demonstrated a genuine issue of material fact.  Despite the voluminous record, and contrary to Kastner's claims, the record evidence does not demonstrate that Intrust invested the trust assets poorly.[7]  Instead, the uncontroverted evidence is that the trust outperformed the S&P 500 index for the period between January 1, 2001, to December 31, 2011.  On January 1, 2001, the trust balance was $859,264.52; the balance was $1,006,425.44 on December 31, 2011.  In addition, it disbursed $516,364.51 over this time period.  Intrust's expert witness opined that Intrust's investment-management activities were well within industry norms.  Nor is there competent evidence that Intrust violated its statutory duties of loyalty, impartiality, and prudent administration to the trust beneficiaries.  We find no fault

---

[6]     Although Fed. R. Civ. P. 26(a)(2)(C) allows for expert witnesses without a written report, this must be stipulated to by the parties or otherwise ordered by the court.  *See* Fed. R. Civ. P. 26(a)(2)(C).  The parties have not directed us to any indication in the record, and we find none, that Kastner's proposed expert was properly submitted under Fed. R. Civ. P. 26(a)(2)(C).

[7]     Kastner's complaint alleged that between 2000 and 2008, the trust lost approximately $40,000.00, the Dow, Nasdaq and S&P 500 investments indices doubled, and that the trust would be worth over $10,000,000.00 if invested as the beneficiaries requested.  The record belies these contentions.

with the district court's grant of summary judgment on Kastner's breach-of-trust claim.

**C. Discovery Rulings**

Kastner also challenges discovery rulings issued by the magistrate judge. He did not object, however, to either the magistrate judge's July 26, 2012, order or May 31, 2012, order. Kastner has waived appellate review of these non-dispositive orders. *See* Fed. R. Civ. P. 72(a) (providing that a party may object to a non-dispositive order within fourteen days of the order but "may not assign as error a defect in the order not timely objected to").[8]

**D. Bias**

Kastner also complains of bias on the part of the district court. He filed two separate motions seeking recusal and disqualification, and change of venue. Both were denied.[9] Kastner argues that before becoming a judge, Judge Melgren worked at a law firm that represented Intrust and had significant financial ties with the corporation. *See* Aplt. Opening Br. at 25.

---

[8] Kastner did not file an objection to the magistrate judge's May 31, 2012, order under Fed. R. Civ. P. 72(a) but did file a "Motion for Reconsideration on Discovery." The magistrate judge, however, did not treat Kastner's motion as an objection under Fed. R. Civ. P. 72(a) and, instead, ruled on the matter under local D. Kan. R. 7.3 for motions for reconsideration.

[9] Kastner also sought the recusal of the magistrate judge. Because the district court's September 2013 order granting summary judgment in favor of Intrust mooted the recusal motion, we do not reach Kastner's claims of bias on the part of the magistrate judge.

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[D]isqualification is appropriate only where a reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006) (internal quotation marks omitted). We review the disqualification ruling for abuse of discretion. *See id.* The requirements for disqualification under § 455 are not satisfied by rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters. *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). Mere familiarity with the defendants, or the type of charge, or the kind of defense presented do not require disqualification under § 455. *See id.* at 994.

Kastner's allegations are insufficient to require recusal. The record demonstrates that, according to Judge Melgren, he did not recall representing Intrust. He further represented that perhaps the law firm he worked for represented Intrust but that this was highly doubtful considering that a principal client of the firm was a rival bank to Intrust. He further represented that after leaving his firm, he was involved in adversarial litigation against it. Even assuming that Judge Melgren represented Intrust in unrelated matters, this would not obligate him to recuse himself under § 455(a). *See id.* (observing that mere familiarity with defendants is generally not cause for recusal). Kastner's claims of Judge Melgren's bias and significant

financial ties to Intrust are merely speculative.  We conclude Judge Melgren did not abuse his discretion in declining to recuse himself.

### III.    Conclusion

The judgment of the district court is affirmed.  Kastner's motion for certification of questions of state law is denied.  Kastner's motion requesting oral argument is denied.

Entered for the Court


Wade Brorby
Senior Circuit Judge